UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

**DAYS INNS WORLDWIDE, INC.,**

*Plaintiff*,

v.

**BOSSIER CITY HOSPITALITY, LLC, et al.,**

*Defendants.*

Civil Action No. 19-05682

ORDER

**THIS MATTER** comes before the Court by way of Plaintiff Days Inns Worldwide, Inc.'s ("Plaintiff") unopposed Motion for Default Judgment pursuant to Federal Rule of Civil Procedure 55(b)(2),[1] ECF No. 10, against Defendants Bossier City Hospitality, LLC ("Bossier") and Imtiaz Shareef ("Shareef," and, together with Bossier, "Defendants");

and it appearing that this action arises out of a franchise agreement dated September 13, 2017, under which Plaintiff granted Defendants permission to operate a 177-room, Days Inn branded guest lodging facility at 200 John Wesley Boulevard, Bossier City, Louisiana (the "Facility") for a period of fifteen years (the "Franchise Agreement"), Compl. ¶¶ 21, 23, ECF No. 1; see id. Ex. A;

and it appearing that pursuant to the Franchise Agreement, Bossier agreed to, among other things: (1) make periodic payments to Plaintiff for royalties, system assessments, taxes, interest, "SynXis" fees,[2] and other fees (collectively, the "Recurring Fees"), id. ¶ 24, Ex. A § 7 & Sched.

---

[1] "[T]he entry of default judgment is left primarily to the discretion of the district court." Hritz v. Woma Corp., 732 F.2d 1178, 1180 (3d Cir. 1984). In deciding whether entry of default is warranted, the Court treats "the factual allegations in a complaint, other than those as to damages . . . as conceded by [the] defendant." DIRECTV, Inc. v. Pepe, 431 F.3d 162, 165 (3d Cir. 2005).

[2] SynXis refers to the SynXis Subscription Agreement entered between the parties on or about the same day as the Franchise Agreement. See Compl. ¶ 22. The SynXis Subscription Agreement governed, among other things, Bossier's "access to and use of certain computer programs, applications, features, and service." Id.

1

C; (2) pay interest to Plaintiff "on any past due amount . . . at the rate of 1.5% per month or the maximum rate permitted by applicable law, whichever is less, accruing from the due date until the amount is paid," id. ¶ 25, Ex. A § 7.3; (3) disclose the amount of gross revenue Bossier earned at the Facility, maintain accurate financial information, and allow Plaintiff to examine, audit, and make copies of Bossier's financial records, id. ¶¶ 26-27, Ex. A §§ 3.6, 4.8; (4) pay liquidated damages to Plaintiff upon termination of the Franchise Agreement in the amount of $1,500 for each guest room that Bossier was authorized to operate at the time of termination, id. ¶¶ 29-30, Ex. A. §§ 12.1, 18.4; (5) "pay all [of Plaintiff's] costs and expenses, including reasonable attorneys' fees" should Plaintiff prevail in enforcing the Franchise Agreement, see id. ¶ 32; and (6) immediately cease using Plaintiff's registered trademarks upon termination of the Franchise Agreement, id. ¶ 31, Ex. A § 13;

and it appearing that Plaintiff had authority to terminate the Franchise Agreement upon notice to Bossier if Bossier discontinued operation of the Facility and/or lost possession or the right to possess the Facility, id. ¶ 28, Ex. A § 11.2;

and it appearing that Shareef personally guaranteed Bossier's obligations under the Franchise Agreement and agreed to "immediately make each payment and perform or cause [Bossier] to perform, each unpaid or unperformed obligation of [Bossier] under the [Franchise] Agreement" upon Bossier's default of the Franchise Agreement (the "Guaranty"), id. ¶¶ 33-35, Ex. C;

and it appearing that in January 2018, the Louisiana Office of State Fire Marshal temporarily closed the Facility for deficient smoke detectors and building code violations, and Plaintiff sent Defendants a letter dated February 7, 2018, notifying them that the closure constituted a breach of the Franchise Agreement, id. ¶¶ 36, 37, Ex. D;

and it appearing that between February and June 2018, Plaintiff sent four written notices to Defendants, notifying them that they defaulted under the Franchise Agreement for failing to pay Recurring Fees and operate the Facility, see id. ¶¶ 38-41, Exs. E-G;

and it appearing that in each notice, Plaintiff indicated that Defendants' failure to cure Bossier's defaults within the respective cure periods could result in the Franchise Agreement's termination, see id.;

and it appearing that Defendants did not cure Bossier's defaults within the respective cure periods, id. ¶ 42;

and it appearing that on June 28, 2018, Plaintiff sent Defendants a formal written notice, terminating the Franchise Agreement and notifying Defendants of their post-termination obligations, including, inter alia, removing all items displaying or referring to the Days Inn brand (the "Days Inn Marks") within ten days from the date of the notice, and paying the full amount of outstanding Recurring Fees, liquidated damages, and early termination costs and fees, id. ¶ 43, Ex. I;

and it appearing that despite receiving that notice, Defendants continued to use the Days Inn Marks without Plaintiff's authorization, see id. ¶¶ 46-47;

and it appearing that Plaintiff sent Defendants two cease and desist letters on September 14, 2018 and October 17, 2018, respectively, regarding Defendants' unauthorized continued use of the Days Inn Marks, id. ¶¶ 48-49, Exs. J-K;

and it appearing that Defendants have nonetheless continued to use the Days Inn Marks, id. ¶ 51;

and it appearing that on February 14, 2019, Plaintiff filed an eight-count Complaint against Defendants, asserting violations of the Lanham Act, 15 U.S.C. §§ 1051 et seq., breaches of

contract, and unjust enrichment, and seeking injunctive relief, an accounting of Bossier's financial books and statements, monetary damages, liquidated damages (or, alternatively, actual damages) under the Franchise Agreement, and a declaratory judgment that Plaintiff has the right to enter the Facility and "remove any and all exterior signage, exterior items and other exterior materials displaying the Days Inn Marks" without notice to Defendants, see id. ¶¶ 52-95;

and it appearing that Defendants have failed to answer the Complaint or otherwise respond as of the date of this Order;

and it appearing that on July 11, 2019, Plaintiff filed the instant Motion for Default Judgment seeking entry of judgment against Defendants, ECF No. 10;

and it appearing that default judgment may only be entered against a properly-served defendant, see E.A. Sween Co., Inc. v. Deli Express of Tenafly, LLC, 19 F. Supp. 3d 560, 567 (D.N.J. 2014);

and it appearing that the docket reflects service upon Defendants, ECF Nos. 6, 7;

and it appearing that the Court must determine whether it has jurisdiction over the action and the parties before entering a default judgment, see Animal Sci. Prods., Inc. v. China Nat'l Metals & Minerals Imp. & Exp. Corp., 596 F. Supp. 2d 842, 848 (D.N.J. 2008);

and it appearing that the Court has subject matter jurisdiction under 28 U.S.C. § 1331 because Plaintiff brings a cause of action under the Lanham Act and has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's state law claims since "[t]he state and federal claims . . . derive from a common nucleus of operative fact," MCI Telecom. Corp. v. Teleconcepts, Inc., 71 F.3d 1086, 1102 (3d Cir. 1995);

and it appearing that "[t]he United States Supreme Court has held that a contractual consent to personal jurisdiction should be enforced unless it would be unreasonable or unjust to do so,"

4

Knights Franchise Sys., Inc. v. Patel, No. 16-1707, 2017 WL 5191805, at *3 (D.N.J. Nov. 9, 2017) (internal quotation marks and citation omitted);

and it appearing that the Court has personal jurisdiction over Bossier pursuant to Section 17.6.3 of the Franchise Agreement, which provides that Bossier consents to "the non-exclusive personal jurisdiction of and venue in . . . the United States District Court for the District of New Jersey," Compl. ¶ 6, and over Shareef pursuant to the terms of the Guaranty, which provides that Shareef is bound by Section 17 of the Franchise Agreement, id. ¶ 7;

and it appearing that the Court finds no unreasonable or unjust grounds to decline exercising personal jurisdiction over Defendants in accordance with the parties' agreement;

and it appearing that the Court must also determine whether Plaintiff has stated a sufficient cause of action and has proven damages before it enters default judgment, Chanel, Inc. v. Gordashevsky, 558 F. Supp. 2d 532, 536, 538 (D.N.J. 2008);

and it appearing that to state a claim for trademark infringement, 15 U.S.C. § 1114, and false designation of origin, 15 U.S.C. § 1125(a), Plaintiff must show: (1) it has a valid and legally protected mark; (2) its ownership over said mark; and (3) Defendants "use of the mark to identify goods or services cau[sing] a likelihood of confusion," A&H Sportswear, Inc. v. Victoria's Secret Stores, Inc., 237 F.3d 198, 210 (3d Cir. 2000);[3]

and it appearing that "[t]he first two requirements are satisfied when a federally registered mark has become incontestable," such that "the mark has been registered, that it has been in continuous use for five consecutive years, and that there has been no adverse decision concerning the registrant's ownership or right to registration," Chanel, 558 F. Supp. 2d at 536;

---

[3] Courts assess trademark infringement and false designation of origin Lanham Act claims under the same standard. A&H Sportswear, 237 F.3d at 210.

and it appearing that Plaintiff has satisfied the first two requirements by demonstrating that: (1) it owns and has registered the Days Inn Marks, see Compl. ¶¶ 14-15; (2) the Days Inn Marks are valid and remain in full force and effect, id. ¶ 15; and (3) the Days Inn Marks have achieved incontestable status under the Lanham Act, 15 U.S.C. § 1065;

and it appearing that to satisfy the third factor—likelihood of confusion—Plaintiff must show that "consumers viewing the mark would probably assume that the product or service it represents is associated with the source of a different product or service identified by a similar mark," A&H Sportswear, 237 F.3d at 210 (internal quotation marks and citation omitted);

and it appearing that Plaintiff alleges that Bossier "marketed, promoted, and rented and continues to market, promote, and rent rooms at the Facility through unauthorized use of the Days Inn Marks, and such use caused and is likely to continue to cause confusion or mistake among prospective or actual customers" "as to the affiliation of Bossier . . . with [Plaintiff]," see Compl. ¶¶ 54, 56;

and it appearing that accepting these allegations as true, Plaintiff has established a likelihood that consumers viewing the Days Inn Marks used at the Facility would assume that the Facility is associated with Plaintiff's brand, and thus, Plaintiff has sufficiently stated claims for trademark infringement and false designation of origin;

and it appearing that to state a claim for breach of contract under New Jersey law, Plaintiff must allege "(1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that [Plaintiff] performed its own contractual obligations," Frederico v. Home Depot, 507 F.3d 188, 203 (3d Cir. 2007);

and it appearing that Plaintiff's Complaint alleges that: (1) there was a contractual relationship between Plaintiff and Defendants based on the Franchise Agreement and the

6

Guaranty, see Compl. ¶¶ 21-32, 33-35; (2) Bossier breached the Franchise Agreement by failing to make required payments of Recurring Fees and failing to operate the Facility after its temporary closure by the Louisiana Office of State Fire Marshal, see id. ¶¶ 36-51, 68, 79-81; (3) Shareef breached the Guaranty when he failed to fulfill Bossier's obligations under the Franchise Agreement, id. ¶¶ 88-90; and (4) Plaintiff suffered damages as a result of Defendants' breaches;

and it appearing that Plaintiff's Complaint attaches the Franchise Agreement, the Guaranty, Plaintiff's notices of default to Defendants, and a final termination letter, id. Exs. A, C-I;

and it appearing that viewing those facts in Plaintiff's favor, Plaintiff has sufficiently stated a claim for breach of the Franchise Agreement and the Guaranty;[4]

and it appearing that although the Court accepts the facts pled in the Complaint "as true for the purpose of determining liability, the plaintiff must prove damages," Moroccanoil, Inc. v. JMG Freight Grp. LLC, No. 14-5608, 2015 WL 6673839, at *2 (D.N.J. Oct. 30, 2015);

and it appearing that Plaintiff requests a default judgment in the amount of $662,841.97, comprised of the principal balance of Defendants' outstanding Recurring Fees and interest calculated at a rate of 1.5% per month ($115,079.25), liquidated damages and interest ($314,336.89), and Lanham Act damages ($233,425.83), ECF No. 10.2 at 6;

and it appearing that to support its claim for Recurring Fees damages, Plaintiff submitted an itemized statement reflecting the Recurring Fees due and owed by Defendants, including interest in the amount of 1.5% per month, as of July 1, 2019, Piccola Aff., Ex. M, ECF 10.4, which is sufficient to demonstrate damages for those fees, see, e.g., Travelodge Hotels, Inc. v. JSK Hosp.,

---

[4] Plaintiff's Complaint also alleges an unjust enrichment claim. See Compl. ¶¶ 82-86. However, the Court need not determine whether Plaintiff properly pled this cause of action as it finds the Complaint sufficiently states a breach of contract claim. See Van Orman v. Am. Ins. Co., 680 F.2d 301, 311 (3d Cir. 1982) (observing that "New Jersey courts regard the existence of a valid contract as a bar to recovery" for unjust enrichment); Caputo v. Nice-Pak Prods., Inc., 693 A.2d 494, 498 (N.J. Super. Ct. App. Div. 1997) ("Because unjust enrichment is an equitable remedy resorted to only where there was no express contract providing for remuneration, a plaintiff may recover on one or the other theory, but not both.").

LLC, No. 16-4982, 2017 WL 3208348, at *4 (D.N.J. Jul. 28, 2017); Travelodge Hotels, Inc. v. Seaside Hosp., LLC, No. 15-5595, 2016 WL 5899281, at *5 (D.N.J. Oct. 6, 2016);

and it appearing that with respect to liquidated damages, Plaintiff directs the Court to the Franchise Agreement's liquidated damages clause, Section 12.1, which provides that, should Plaintiff terminate the Franchise Agreement before the last two years in the contractual term, Defendants agreed to pay liquidated damages in the amount of $1,500.00 for each Facility guest room that Plaintiff authorized Defendants to operate, in accordance with Section 18.4 and Schedule B, see Piccola Aff. ¶¶ 23-24; id. Ex. A §§ 12.1, 18.4 & Sched. B;

and it appearing that New Jersey law governs the Franchise Agreement, see Piccola Aff., Ex. A § 17.6.1, and under New Jersey law, "liquidated damages clauses may only be enforced if they reasonably forecast the harm resulting from the breach," but that such clauses are entitled to a presumption of validity, Knights Franchise Sys., Inc. v. First Value RC, LLC, No. 13-4976, 2017 WL 1170849, at *3 (D.N.J. Mar. 29, 2017) (citing Wasserman's Inc. v. Twp. of Middletown, 137 N.J. 238 (1994));

and it appearing that Plaintiff has established that it is entitled to liquidated damages in the amount of $265,500 before interest, which it calculated using the formula explicitly set forth in the Franchise Agreement by multiplying 177—the number of guest rooms Plaintiff authorized Defendants to operate—by $1,500 per room, see Piccola Aff. ¶ 37, Ex. A §§ 12.1, 18.4 & Sched. B;

and it appearing that courts have generally found similar contractually agreed-upon liquidated damages clauses satisfy the "reasonable forecast of harm" standard, see, e.g., First Value RC, LLC, 2017 WL 1170849, at *4; Knights Franchise Sys, Inc. v. Forward Hotels and Dev., LLC, No. 17-2789, 2019 WL 2636070, at *5 (D.N.J. June 27, 2019); Travelodge Hotels, Inc. v. Surajhira, LLC, No. 18-10510, 2019 WL 981699, at *3 (D.N.J. Feb. 28, 2019);

8

and it appearing that although Plaintiff seeks prejudgment interest on liquidated damages in the amount of $48,836.89, see id. Ex. N, Plaintiff has not demonstrated its basis and the formula it used for calculating such interest;[5]

and it appearing that Plaintiff has thus proven liquidated damages in the amount of $265,000 only;

and it appearing that Plaintiff also seeks infringement damages under the Lanham Act in the amount of $233,425.83, id. ¶ 54;

and it appearing that the Lanham Act authorizes a plaintiff to recover damages at an amount assessed by the Court, see 15 U.S.C. § 1117(a), and the Court has broad discretion in fashioning such monetary relief, Bracco Diagnostics, Inc. v. Amersham Health, Inc., 627 F. Supp. 2d 384, 480 (D.N.J. 2009);

and it appearing that "the Lanham Act authorizes damages even when they are not susceptible to precise calculations," and "[f]ranchise fees normally received for use of a mark are a proper measure of damages," Travelodge Hotels, Inc. v. S.S.B. and Assocs., LLC, No. 14-883, 2015 WL 4530432, at *9 (D.N.J. July 27, 2015) (internal quotation marks and citation omitted);

and it appearing that Plaintiff alleges it has suffered $77,808.61 in infringement damages based on the average monthly recurring fees incurred by Defendants for ten months before termination ($7,073.51) multiplied by the number of months "Defendants are confirmed to have been infringing upon the Days Inn Marks" (11 months), Piccola Aff. ¶ 55;

and it appearing that the only evidence Plaintiff proffers to support the number of months Defendants infringed on the Days Inn Marks is two cease and desist letters, dated September 14,

---

[5] It appears that the Piccola Affidavit is missing a page pertaining to liquidated damages. See Piccola Aff. at 20-22 (missing page 21). Plaintiff bears the burden of proving damages, and the Court will not speculate as to the missing page's contents or Plaintiff's formula for calculating interest. Going forward, Plaintiff is cautioned to be careful of its electronic filing obligations.

9

2018 and October 17, 2018, and two photos allegedly taken on July 8, 2019, see Compl.¶¶ 48-49, 51, Exs. J-K; Piccola Aff. ¶¶ 42-43, 45, Ex. L;

and it appearing that Plaintiff's photos as proof of infringement are insufficient because they merely show a building with a Days Inn Mark and a sign with a Days Inn Mark, respectively, without any additional identifying information demonstrating that they depict the Facility, such as the address or location of the building and the sign, and in assessing damages, Plaintiff is not entitled to a presumption of truth, see Moroccanoil, Inc., 2015 WL 6673839, at *2;

and it appearing that based on the remainder of the record, Plaintiff, at this point, has established continued infringement from June 28, 2018 until October 17, 2018, the latter reflecting the date on which it sent its second cease and desist letter to Defendants, and is therefore entitled to infringement damages in the amount of $25,571.12;[6]

and it appearing that courts may impose treble damages only "if the defendant's infringement was intentional, knowing, or willfully blind," Travelodge Hotels, Inc. v. Wilcox Hotel, LLC, No. 17-0391, 2018 WL 1919955, at *4 (D.N.J. Apr. 23, 2018); see 15 U.S.C. § 1117(b);

and it appearing that Plaintiff has demonstrated that Defendants intentionally and willfully infringed the Days Inn Marks because Defendants continued to use those marks despite receiving two cease and desist letters from Plaintiff, see Compl.¶¶ 48-49, 51, Exs. J-K; Piccola Aff. 42-43, 45, Ex. L; see also Ramada Worldwide Inc. v. Courtney Hotels USA, LLC, No. 11-896, 2012 WL

---

[6] The Court calculated this amount using Plaintiff's proposed formula for franchise fees as follows. First, the Court calculated the total infringement damages for June 2018 by dividing $7,073.51—the average monthly Recurring Fees due to Plaintiff—by 30—the number of days in June—and multiplying the result by 2—the remaining days in the month after termination—for a total of $471.57. Next, the Court calculated the total infringement damages for July through September 2018 by multiplying $7,073.51 by 3—the number of months Defendants continuously infringed Plaintiff's marks without interruption—for a total of $21,220.53. Finally, the Court calculated the total infringement damages for October 2018 by dividing $7,073.51 by 31—the number of days in October—and multiplying the result by 17—the date of the second cease and desist letter—for a total of $3,879.02. Combined, these amounts total $25,571.12.

924385, at *6 (finding intentional infringement based on defendant's continued use of plaintiff's marks after receiving cease and desist letters);

and it appearing that the Court therefore grants Plaintiff treble damages, bringing Defendants' total liability for infringement damages to $76,713.36;

and it appearing that Plaintiff also requests that the Court permanently enjoin Defendants from marketing, promoting, or renting guest lodging services at the Facility under the Days Inn Marks, see ECF No. 10.2;

and it appearing that Section 43(c) of the Lanham Act permits the Court to grant injunctive relief to owners of famous distinctive marks that have been infringed "subject to the principles of equity," see 15 U.S.C. § 1125(c)(1);

and it appearing that before granting injunctive relief, the Court must be satisfied that Plaintiff has demonstrated "(1) that it has suffered an irreparable injury; (2) that the remedies available at law, such as monetary damages, prove inadequate to compensate for that injury; (3) that the balance of hardships between the plaintiff and defendant favor equitable relief; and (4) that the public interest would not be disserved by a permanent injunction," Chanel, Inc. v. Matos, 133 F. Supp. 3d 678, 689 (D.N.J. 2015) (internal quotation marks and citation omitted);

and it appearing that because Plaintiff has neither adduced evidence establishing Defendants' continued use of the Days Inn Marks after the date Plaintiff sent the second cease and desist letter to Defendants such that it has suffered irreparable injury nor offered any other evidence or arguments as to why injunctive relief is warranted, and thus, the Court denies Plaintiff's request for permanent injunctive relief;

and it appearing that for the same reasons, the Court declines Plaintiff's request for an order permitting an authorized agent of Plaintiff to enter the Facility without prior notice to Defendants

and remove any and all exterior signage, exterior items and other exterior materials displaying the Days Inn Marks that Bossier has not removed;

and it appearing that after a court is satisfied that the prerequisites for entering default have been met, it must consider the following three factors: (1) "prejudice to the plaintiff if default is denied"; (2) "whether the defendant appears to have a litigable defense"; and (3) "whether defendant's delay is due to culpable conduct," Walker v. Pennsylvania, 580 F. App'x 75, 78 (3d Cir. 2014);

and it appearing that Plaintiff would suffer prejudice if the Court denied default because denial would further delay compensating Plaintiff for damages suffered from Defendants' trademark infringement and breaches of the Franchise Agreement and the Guaranty;

and it appearing that, accepting the allegations in the Complaint as true, Defendants do not appear to have a meritorious defense, see HICA Educ. Loan Corp. v. Surikov, No. 14-1045, 2015 WL 273656, at *3 (D.N.J. Jan. 22, 2015) (weighing this factor in the plaintiff's favor where the defendant failed to respond with "evidence or facts containing information that could provide the basis for a meritorious defense");

and it appearing that Defendants' failure to respond to the Complaint—which contains allegations of substantial financial injuries—for nearly one year demonstrates culpable conduct, see Slover v. Live Universe, Inc., No. 08-02645, 2009 WL 606133, at *2 (D.N.J. Mar. 9, 2009) ("Defendant is . . . presumed culpable where it has failed to answer, move, or otherwise respond.");

and it appearing that all three factors support the entry of default judgment;

**IT IS** on this 14th day of February, 2020;

**ORDERED** that Plaintiff's Motion for Default Judgment, ECF No. 10, is hereby **GRANTED** in part and **DENIED** in part; and it is further

**ORDERED** that Plaintiff's motion is granted only as it pertains to liability, damages associated with the Recurring Fees, liquidated damages without interest, and infringement damages from June 28, 2018 to October 17, 2018; and it is further

**ORDERED** that judgment is hereby entered against Defendants in the amount of $457,292.61, comprised of the following:

- $115,079.25 for Recurring Fees, inclusive of interest;
- $265,500.00 for liquidated damages; and
- $76,713.36 for infringement damages under the Lanham Act; and it is further

**ORDERED** that Plaintiff's request that the Court permanently enjoin Defendants from marketing, promoting, or renting guest lodging services at the Facility under the Days Inn Marks is hereby **DENIED** without prejudice; and it is further

**ORDERED** that Plaintiff's request for an order permitting an authorized agent of Plaintiff to enter the Facility without prior notice to Defendants and remove any and all exterior signage, exterior items and other exterior materials displaying the Days Inn Marks that Bossier has not removed is hereby **DENIED** without prejudice.

Plaintiff may file an amended motion that cures the deficiencies regarding interest on liquidated damages, the scope of infringement damages, and injunctive relief within thirty (30) days of this Order.

                                              */s Madeline Cox Arleo*  
                                              **MADELINE COX ARLEO**  
                                              **UNITED STATES DISTRICT JUDGE**