## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

DAYS INNS WORLDWIDE, INC.,

*Plaintiff,*

v.

BOSSIER CITY HOSPITALITY, LLC, et al.,

*Defendants.*

Civil Action No. 19-5682

ORDER

**THIS MATTER** comes before the Court by way of Plaintiff Days Inns Worldwide, Inc.'s ("Plaintiff") unopposed Amended Motion for Entry of Permanent Injunction and Final Judgment by Default pursuant to Federal Rule of Civil Procedure 55(b),[1] ECF No. 16, against Defendants Bossier City Hospitality, LLC ("Bossier") and Imtiaz Shareef ("Shareef," and, together with Bossier, "Defendants");

and it appearing that this action arises out of a franchise agreement dated September 13, 2017, under which Plaintiff granted Defendants permission to operate a 177-room, Days Inn branded guest lodging facility at 200 John Wesley Boulevard, Bossier City, Louisiana (the "Facility") for a period of fifteen years (the "Franchise Agreement"), Compl. ¶¶ 21, 23, ECF No. 1; see id. Ex. A;

and it appearing that pursuant to the Franchise Agreement, Bossier agreed to, among other things: (1) make periodic payments to Plaintiff for royalties, system assessments, taxes, interest,

---

[1] "[T]he entry of default judgment is left primarily to the discretion of the district court." Hritz v. Woma Corp., 732 F.2d 1178, 1180 (3d Cir. 1984). In deciding whether entry of default is warranted, the Court treats "the factual allegations in a complaint, other than those as to damages . . . as conceded by [the] defendant." DIRECTV, Inc. v. Pepe, 431 F.3d 162, 165 (3d Cir. 2005).

"SynXis" fees,[2] and other fees (collectively, the "Recurring Fees"), id. ¶ 24, Ex. A § 7 & Sched.

C; (2) pay interest to Plaintiff "on any past due amount . . . at the rate of 1.5% per month or the

maximum rate permitted by applicable law, whichever is less, accruing from the due date until the

amount is paid," id. ¶ 25, Ex. A § 7.3; (3) disclose the amount of gross revenue Bossier earned at

the Facility, maintain accurate financial information, and allow Plaintiff to examine, audit, and

make copies of Bossier's financial records, id. ¶¶ 26-27, Ex. A §§ 3.6, 4.8; (4) pay liquidated

damages to Plaintiff upon termination of the Franchise Agreement in the amount of $1,500 for

each guest room that Bossier was authorized to operate at the time of termination, id. ¶¶ 29-30,

Ex. A. §§ 12.1, 18.4; (5) "pay all [of Plaintiff's] costs and expenses, including reasonable

attorneys' fees" should Plaintiff prevail in enforcing the Franchise Agreement, see id. ¶ 32; and

(6) immediately cease using Plaintiff's registered trademarks upon termination of the Franchise

Agreement, id. ¶ 31, Ex. A § 13;

and it appearing that Plaintiff had authority to terminate the Franchise Agreement upon

notice to Bossier if Bossier discontinued operation of the Facility and/or lost possession or the

right to possess the Facility, id. ¶ 28, Ex. A § 11.2;

and it appearing that Shareef personally guaranteed Bossier's obligations under the

Franchise Agreement and agreed to "immediately make each payment and perform or cause

[Bossier] to perform, each unpaid or unperformed obligation of [Bossier] under the [Franchise]

Agreement" upon Bossier's default of the Franchise Agreement (the "Guaranty"), id. ¶¶ 33-35,

Ex. C;

and it appearing that in January 2018, the Louisiana Office of State Fire Marshal

temporarily closed the Facility for deficient smoke detectors and building code violations, and

---

[2] All terms not otherwise defined herein have the same meaning as provided in the Court's First Order for Default
Judgment dated February 14, 2020, ECF No. 11.

2

Plaintiff sent Defendants a letter dated February 7, 2018, notifying them that the closure constituted a breach of the Franchise Agreement, id. ¶¶ 36, 37, Ex. D;

and it appearing that between February and June 2018, Plaintiff sent four written notices to Defendants, notifying them that they defaulted under the Franchise Agreement for failing to pay Recurring Fees and operate the Facility, see id. ¶¶ 38-41, Exs. E-G;

and it appearing that in each notice, Plaintiff indicated that Defendants' failure to cure Bossier's defaults within the respective cure periods could result in the Franchise Agreement's termination, see id.;

and it appearing that Defendants did not cure Bossier's defaults within the respective cure periods, id. ¶ 42;

and it appearing that on June 28, 2018, Plaintiff sent Defendants a formal written notice, terminating the Franchise Agreement and notifying Defendants of their post-termination obligations, including, inter alia, removing all items displaying or referring to the Days Inn brand (the "Days Inn Marks") within ten days from the date of the notice, and paying the full amount of outstanding Recurring Fees, liquidated damages, and early termination costs and fees, id. ¶ 43, Ex. I;

and it appearing that despite receiving that notice, Defendants continued to use the Days Inn Marks without Plaintiff's authorization, see id. ¶¶ 46-47;

and it appearing that Plaintiff sent Defendants two cease and desist letters on September 14, 2018 and October 17, 2018, respectively, regarding Defendants' unauthorized continued use of the Days Inn Marks, id. ¶¶ 48-49, Exs. J-K;

and it appearing that Defendants have nonetheless continued to use the Days Inn Marks, id. ¶ 51;

3

and it appearing that on February 14, 2019, Plaintiff filed an eight-count Complaint against Defendants, asserting violations of the Lanham Act, 15 U.S.C. §§ 1051 et seq., breaches of contract, and unjust enrichment, and seeking injunctive relief, an accounting of Bossier's financial books and statements, monetary damages, liquidated damages (or, alternatively, actual damages) under the Franchise Agreement, and a declaratory judgment that Plaintiff has the right to enter the Facility and "remove any and all exterior signage, exterior items and other exterior materials displaying the Days Inn Marks" without notice to Defendants, see id. ¶¶ 52-95;

and it appearing that Defendants have failed to answer the Complaint or otherwise respond as of the date of this Order;

and it appearing that on July 11, 2019, Plaintiff filed its original Motion for Default Judgment seeking entry of judgment against Defendants, ECF No. 10;

and it appearing that the Court issued an Order granting in part and denying in part Plaintiff's original Motion for Default Judgment on February 14, 2020, and allowing Plaintiff to file an amended Motion for Default Judgment curing deficiencies regarding interest on liquidated damages, the scope of infringement damages, and injunctive relief, ECF No. 11 ("First Order for Default Judgment");

and it appearing that on May 18, 2020, Plaintiff filed the instant Amended Motion for Entry of Permanent Injunction and Final Judgment by Default, ECF No. 16;

and it appearing that the Court previously found that Defendants were properly served, that it has personal jurisdiction over Defendants, and that Plaintiff sufficiently stated claims for trademark infringement, false designation of origin, and breaches of the Franchise Agreement and the Guaranty, First Order for Default Judgment at 4-7;

and it appearing that the Court reincorporates those findings here;

4

and it appearing that although the Court accepts the facts pled in the Complaint "as true for the purpose of determining liability, the plaintiff must prove damages," Moroccanoil, Inc. v. JMG Freight Grp. LLC, No. 14-5608, 2015 WL 6673839, at *2 (D.N.J. Oct. 30, 2015);

and it appearing that the Court previously found that, although Plaintiff proved liquidated damages in the amount of $265,000, it did not prove prejudgment interest for those liquidated damages, First Order for Default Judgment at 9;

and it appearing that Plaintiff now provides the Court with a complete affidavit that establishes it is entitled to interest on the liquidated damages in the amount of $48,836.89, which represents the per diem interest of $130.93 applied across the 373 days from the date of termination through the return date of the original Motion, Affidavit of Suzanne Fenimore ¶ 55 ("Fenimore Aff."), ECF No. 16.3; id. Ex. A § 7.3;

and it thus appearing that Plaintiff is entitled to prejudgment interest on liquidated damages in the amount of $48,836.89, in addition to liquidated damages in the amount of $265,000;

and it appearing that, although Plaintiff originally sought infringement damages under the Lanham Act in the amount of $233,425.83,[3] the Court previously found Plaintiff only proved continued infringement from June 28, 2018 until October 17, 2018, which entitled it to infringement damages under the Lanham Act in the amount of $25,571.12, First Order for Default Judgment at 10;

---

[3] The infringement damages have been calculated by multiplying the average monthly recurring fees that should have been paid by Defendants for ten months prior to termination by the number of months that Defendants are confirmed to have been infringing upon the Days Inn Marks, plus treble damages in light of Defendants' willful conduct. Fenimore Aff. ¶57. Plaintiff originally alleged it has suffered $77,808.61 in infringement damages based on the average monthly recurring fees incurred by Defendants ($7,073.51) over an alleged 11-month infringement period. See First Order for Default Judgment at 9. However, the Court previously found that two photos allegedly taken on July 8, 2019—with no other indicia that they showed the Days Inn Marks in use at the Facility—were insufficient to prove infringement for an 11-month period. Id. at 10.

and it appearing that the Court found that Plaintiff was entitled to treble damages for intentional infringement under the Lanham Act, which brought Defendants' total liability for infringement damages to $76,713.36, id. at 11;

and it appearing that Plaintiff now alleges that it has suffered $134,396.69 in infringement damages based on the average monthly recurring fees incurred by Defendants for the months before termination ($7,073.51) multiplied by the alleged number of months of infringement (19), Fenimore Aff. ¶ 57;

and it appearing that Plaintiff now provides the Court with photos averred to be taken of the Facility on July 8, 2019 showing the continued improper use of the Days Inn Marks, Fenimore Aff. ¶ 45 & Ex. L, as well as a copy of a Post Termination Obligations Checklist from March 6, 2020 that shows the continued improper use of the Days Inn Marks at the Facility, id. Ex. M,[4]

and it appearing therefore that Plaintiff has demonstrated continued intentional infringement of the Days Inn Marks for the period ranging from June 28, 2018 to March 6, 2020 and it is thus entitled to infringement damages in the amount of $134,396.69;

and it appearing that the Court found in the First Order for Default Judgment that treble damages were appropriate in this case because Defendants continued to use the Days Inn Marks after receiving two cease and desist letters, First Order for Default Judgment at 11;

and it appearing that the Court therefore grants Plaintiff treble damages on the revised infringement damages figure, bringing Defendants' total liability for infringement damages to $403,190.07 (inclusive of the $76,713.36 previously awarded in the First Order for Default Judgment);

---

[4] The photos contained in Exhibit M are not clearly visible to the Court.  However, the document itself notes that the "primary signage" at the Facility was not removed, replaced, or covered.  Additionally, the Fenimore Affidavit avers the photos show the use of the Days Inn Marks.  Fenimore Aff. ¶ 46.

and it appearing that Plaintiff also requests that the Court permanently enjoin Defendants from marketing, promoting, or renting guest lodging services at the Facility under the Days Inn Marks, see ECF No. 10.2;

and it appearing that the Court previously declined to grant injunctive relief because Plaintiff "neither adduced evidence establishing Defendants' continued use of the Days Inn Marks after the date Plaintiff sent the second cease and desist letter to Defendants such that it has suffered irreparable injury nor offered any other evidence" as to why injunctive relief was warranted, see First Order for Default Judgment at 11;

and it appearing that Section 43(c) of the Lanham Act permits the Court to grant injunctive relief to owners of famous distinctive marks that have been infringed "subject to the principles of equity," see 15 U.S.C. § 1125(c)(1);

and it appearing that before granting injunctive relief, the Court must be satisfied that Plaintiff has demonstrated "(1) that it has suffered an irreparable injury; (2) that the remedies available at law, such as monetary damages, prove inadequate to compensate for that injury; (3) that the balance of hardships between the plaintiff and defendant favor equitable relief; and (4) that the public interest would not be disserved by a permanent injunction," Chanel, Inc. v. Matos, 133 F. Supp. 3d 678, 689 (D.N.J. 2015) (internal quotation marks and citation omitted);

and it appearing that "[a] permanent injunction issues to a party after winning on the merits and is ordinarily granted upon a finding of trademark infringement," Lermer Germany GmbH v. Lermer Corp., 94 F.3d 1575, 1577 (Fed. Cir. 1996);

and it appearing that Plaintiff faces irreparable injury in the absence of a permanent injunction because Defendants' are displaying the Days Inn Mark on signage at the Facility near and visible from a roadway, Fenimore Aff. Exs. L & M, which causes a likelihood of confusion as

to the source of the services at the Facility, see Chanel, 133 F. Supp. 3d at 689 ("[U]se of Plaintiff's

exact Marks creates a clear case of confusion."); see also Luxottica Grp., S.p.A. v. Shore Enuff,

No. 16-5847, 2019 WL 4027547, at *5 (D.N.J. Aug. 27, 2019) (finding likelihood confusion

"when the mark owner and the alleged infringer sell similar goods or services" and explaining

likelihood of confusion establishes irreparable injury);

and it appearing that remedies at law are inadequate because they will not prevent future

infringement by Defendants, Chanel, 133 F. Supp. 3d at 689;

and it appearing that the balance of hardships between Plaintiff and Defendants favors

equitable relief because an injunction "only requires [Defendants] to abide by the law and to refrain

from infringing the federally protected [Days Inn Marks], whereas in the absence of an injunction,

Plaintiff faces the hardships that gave rise to this litigation," id.;

and it appearing that Plaintiff is therefore entitled to injunctive relief permanently enjoining

Defendants from infringing upon the Days Inn Marks;

and it appearing that Plaintiff also seeks an order stating "that pursuant to section 13.2 of

the Franchise Agreement and the authority of the Court" Plaintiff has the right to enter the Facility

and "remove any and all exterior signage, exterior items and other exterior materials displaying

the Days Inn Marks" without notice to Defendants, see Amended Motion at Proposed Order, ECF

No. 16.1;

and it appearing that for the same reasons the Court grants injunctive relief against

infringement, the Court will also grant Plaintiff's request for an order permitting entry to the

Facility to remove exterior signage without notice;[5]

---

[5] Plaintiff seeks an order stating "that pursuant to section 13.2 of the Franchise Agreement and the authority of the Court" Plaintiff has the right to enter the Facility and "remove any and all exterior signage, exterior items and other exterior materials displaying the Days Inn Marks" without notice to Defendants.  See Amended Motion at Proposed Order.  Section 13.2 of the Franchise Agreement states that in the event of termination Plaintiff may, "to the extent

and it appearing that after a court is satisfied that the prerequisites for entering default have been met, it must consider the following three factors: (1) "prejudice to the plaintiff if default is denied;" (2) "whether the defendant appears to have a litigable defense;" and (3) "whether defendant's delay is due to culpable conduct," Walker v. Pennsylvania, 580 F. App'x 75, 78 (3d Cir. 2014);

and it appearing that Plaintiff would suffer prejudice if the Court denied default because denial would further delay compensating Plaintiff for damages suffered from Defendants' trademark infringement and breaches of the Franchise Agreement and the Guaranty;

and it appearing that, accepting the allegations in the Complaint as true, Defendants do not appear to have a meritorious defense, see HICA Educ. Loan Corp. v. Surikov, No. 14-1045, 2015 WL 273656, at *3 (D.N.J. Jan. 22, 2015) (weighing this factor in the plaintiff's favor where the defendant failed to respond with "evidence or facts containing information that could provide the basis for a meritorious defense");

and it appearing that Defendants' failure to respond to the Complaint—which contains allegations of substantial financial injuries—for over one year demonstrates culpable conduct, see Slover v. Live Universe, Inc., No. 08-02645, 2009 WL 606133, at *2 (D.N.J. Mar. 9, 2009) ("Defendant is . . . presumed culpable where it has failed to answer, move, or otherwise respond.");

and it appearing that all three factors support the entry of default judgment;

**IT IS** on this 9th day of December, 2020;

---

permitted by applicable law," enter the Facility without notice to remove "interior or exterior Mark-bearing signage." Fenimore Aff. Ex. A. § 13.2.  The Court notes that its order granting entry without notice is confined to exterior signage, per Plaintiff's Proposed Order.  To the extent Plaintiff later seeks to enter the Facility to remove interior signage bearing the Days Inn Marks, Plaintiff may do so upon seven (7) days' notice to Defendants and upon filing such notice with the Court.

**ORDERED** that Plaintiff's Amended Motion for Entry of Permanent Injunction and Final Judgment by Default, ECF No. 16, is hereby **GRANTED**; and it is further

**ORDERED** that judgment is entered against Defendants in the amount of $832,606.21, comprised of the following:

- $115,079.25 for Recurring Fees, inclusive of interest (previously awarded per the First Order for Default Judgment);

- $265,500.00 for liquidated damages (previously awarded per the First Order for Default Judgment);

- $48,836.89 for prejudgment interest on liquidated damage;

- $403,190.97 for infringement damages under the Lanham Act (inclusive of the $76,713.36 previously awarded per the First Order for Default Judgment); and it is further

**ORDERED** that Defendants, their officers, agents, servants, and employees and any persons in active concert or participation with them are permanently restrained and enjoined from infringing upon Plaintiff's federally-registered Days Inn Marks as identified in the Complaint at Paragraph 14;

**ORDERED** that, pursuant to Section 13.2 of the Franchise Agreement and the authority of this Court, Plaintiff or its authorized agent shall have the right, without prior notice to Defendants or this Court, to enter the property at the Facility and remove any or all exterior signage, exterior items and other exterior materials displaying the Days Inn Marks that Defendants have not removed or obliterated within ten days after the date of entry of this Order.

*/s/ Madeline Cox Arleo*_____
**MADELINE COX ARLEO**
**UNITED STATES DISTRICT JUDGE**